IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| JEFFREY LEWIS, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 20-cv-03373-SRB |
| SOUTHWESTERN BELL TELEPHONE COMPANY, d/b/a AT&T, | ) ) ) ) | |
| Defendant. | ) | |

## **ORDER**

Before the Court is Defendant Southwestern Bell Telephone Company's ("SWB") Motion for Summary Judgment. (Doc. #62.) For the reasons stated below, the motion is GRANTED.

### I. BACKGROUND

Plaintiff Jeffrey Lewis ("Plaintiff") brings this employment discrimination and retaliation action against his former employer, SWB. For the purpose of resolving the pending motion, and unless otherwise indicated, the following facts are uncontroverted or deemed uncontroverted. Additional facts relevant to the parties' arguments are set forth in Section III.[1]

### A. Plaintiff's Health Condition

Plaintiff, a Black male, was diagnosed with MRSA in 2016.[2] (Doc. #63-5, p. 4.) MRSA is an episodic and stress-driven condition that causes large lesions to form on his body.

---

[1] The Court has reviewed all briefs and exhibits. Only those facts necessary to resolve the pending motion are discussed below and are simplified to the extent possible.

[2] Methicillin-resistant *Staphylococcus aureus*, more commonly known as "MRSA," is an antibiotic-resistant bacterial strain that can cause severe infections in humans. *See generally* CTRS. FOR DISEASE CONTROL & PREV., *General Information: Methicillin-resistant Staphyloccoccus aureus*, https://www.cdc.gov/mrsa/community/index.html (last visited Jan. 19, 2021).

(Doc. #63-5, p. 4.) MRSA episodes last from three to ten days. (Doc. #63-5, p. 5.) Plaintiff's MRSA episodes are painful, "like a lot of pressure . . . in that spot, and it gets very warm." (Doc. #63-5, p. 4.) Plaintiff primarily experiences MRSA episodes on his nose and describes them as "real bad pimple[s] that won't pop almost." (Doc. #63-5, p. 31.) To treat MRSA, Plaintiff uses oral and topical antibiotics. (Doc. #63-5, pp. 4-5.) The oral antibiotics cause Plaintiff to experience nausea, headaches, and hot flashes. (Doc. #63-5, p. 5.) Plaintiff is not sure how many times he experiences episodes per year. (Doc. #63-5, p. 5.) From April to September of 2019, Plaintiff experienced MRSA episodes "[p]robably once a month at least." (Doc. #63-5, p. 42.) From June 2020 to June 2021, Plaintiff experienced two MRSA episodes. (Doc. #63-5, p. 4.)

### B. Plaintiff's Employment with SWB

On October 15, 2018, SWB hired Plaintiff to work in one of SWB's call centers. "[R]ight at the beginning" of his employment, Plaintiff informed SWB that he suffered from MRSA. (Doc. #63-5, p. 15.) Plaintiff took part in a twelve-week training program for new employees. Plaintiff "had serious attendance issues to start the process." (Doc. #75-22, p. 14.) Despite attendance concerns, Plaintiff performed well in the training program and was one of the "top choice[s]" for the supervisors' teams. (Doc. #75-22, p. 14.)

As an employee at a SWB call center, Plaintiff had two scheduled 15-minute breaks and one lunch break. (Doc. #63-4, p. 13.) Plaintiff could also take a "reasonable" amount of health breaks, which he used when he experienced MRSA symptoms. (Doc. #63-4, p. 14; Doc. #63-5, p. 47.) Plaintiff was never denied a break and did not ask for further accommodation. However, Plaintiff was told to make his health breaks as short as possible and felt that if he took too long of breaks his supervisors would "come look[ing]" for him. (Doc. #63-5, pp. 47, 50.) Taking these

2

breaks affected Plaintiff's job performance as "the more you're off the phone, then subsequently that's going to lead to less calls, less ability to get calls." (Doc. #63, p. 50.)

### C. Allegations of Sexual Assault

During the twelve-week training program, a female teammate accused Plaintiff of sexual harassment. Plaintiff was not disciplined because SWB investigation produced "no facts or anything proving that what was alleged was true or factual." (Doc. #63-5, p. 14.) Plaintiff had no further issues with the teammate following this incident and they worked together until Plaintiff's employment ended. (Doc. #63-5, p. 14.)

### D. Disclosure of Plaintiff's Medical Information

SWB maintains a policy prohibiting racial and disability-based discrimination. (Doc. #63-3, p. 2.) SWB has a hotline that employees can use to report suspected violations of this policy. On April 22, 2019, Union President Ron Burns ("Mr. Burns") reported an incident he learned about from SWB employee Ashley Huffman ("Ms. Huffman") to SWB's hotline. Ms. Huffman had an uncomfortable encounter with sales coach Raquel Durham ("Ms. Durham") in which Ms. Durham asked Ms. Huffman if she was engaged in a sexual relationship with Plaintiff. (Doc. #75-27, p. 20.) Ms. Huffman told Plaintiff about the encounter, who also felt uncomfortable. (Doc. #75-27, p. 20.)

On April 26, 2019, Ms. Huffman informed Plaintiff that Ms. Durham shared Plaintiff's MRSA diagnosis with her without Plaintiff's consent. (Doc. #63-5, p. 30.) Plaintiff raised concerns regarding Ms. Durham's disclosure with his supervisor, Elizabeth Braught ("Ms. Braught"), stating he was worried about retaliation from management. (Doc. #63-5, pp. 30-31.) Plaintiff reported the disclosure of his MRSA diagnosis on the company's hotline on June 24,

3

2019, because of increasingly uncomfortable interactions with his co-workers. (Doc. #63-5, p. 32.) Plaintiff states that "it's almost like [he] was put off as a plague." (Doc. #63-5, p. 48.)

During SWB's investigation into the issue, SWB employee Christi Spoon ("Ms. Spoon") stated that Ms. Durham told Ms. Huffman that Plaintiff had MRSA and that Ms. Huffman should "get tested." (Doc. #75-27, p. 30.) Additionally, Ms. Spoon stated that Ms. Durham had disclosed Plaintiff's medical condition to Ms. Spoon on a separate occasion. (Doc. #75-27, p. 30.) SWB felt that these discoveries were not "conclusive enough to substantiate the allegation." (Doc. #75-27, p. 32.) SWB told Plaintiff it could not disclose the result of the investigation, but that Plaintiff would still be working with Ms. Durham. (Doc. #63-5, p. 33.) In late August 2019, Plaintiff filed a grievance with his union representative. (Doc. #63-1, p. 45.) Plaintiff did not hear back from the union representative and Plaintiff did not follow up. (Doc. #63-5, p. 45.)

### E. Plaintiff's Work Performance and Resignation

Plaintiff's job performance was measured on a scorecard system. SWB measures performance in four categories: broadband, video, wireless, and "VOC[.]" (Doc. #63-4, p. 3.) SWB sets a target number for each category, and performance in each category is capped at 120%. An employee meets expectations, known as passing a scorecard, if they "get 100 percent or higher[.]" (Doc. #63-4, p. 5.)

Plaintiff received a scorecard total of 88.64% for January 2019 and 97.57% for February 2019. (Doc. #63-9, pp. 1-2.) Ms. Braught placed Plaintiff on a performance improvement plan due to Plaintiff's failure to pass his January and February 2019 scorecards. (Doc. #63-1, p. 6.) SWB assigned Plaintiff a mentor, but Plaintiff testified "we didn't end up doing a whole lot with it." (Doc. #63-5, p. 18.) Plaintiff received a scorecard total of 87.28% for

4

March 2019 and 86.84% for April 2019.  (Doc. #63-4, pp. 3-4.)  Plaintiff alleges that Ms. Braught ended his mentorship program in April 2019 because he did not meet his performance milestones.  (Doc. #63-5, p. 35.)

On May 14, 2019, Ms. Braught placed Plaintiff "on a Performance Notice–the first step of corrective action[.]"  (Doc. #63-1, p. 6.)  The same day, Ms. Braught "held a disciplinary meeting with [Plaintiff] and a union representative" and "told [Plaintiff] that he needed to improve his performance and hit at least 100% on a scorecard, and that failure to do so could lead to further discipline."  (Doc. #63-1, pp. 5-7.)  Plaintiff received a scorecard total of 79.32% for May 2019 and 95.01% for June 2019.  (Doc. #63-4, p. 5.)

On July 23, 2019, Ms. Braught again held a disciplinary hearing with Plaintiff. (Doc. #63-1, p. 7.)  Plaintiff told Ms. Braught that he felt like "she nitpicked everything" and "was always looking for something to try to discipline [Plaintiff] about[.]"  (Doc. #63-5, p. 34.) Plaintiff requested to be moved off of Ms. Braught's team, but his request was denied.  Plaintiff received a scorecard total of 67.59% for July 2019.  (Doc. #63-4, p. 6.)  In August 2019, SWB moved Plaintiff's workstation away from his coworkers.  (Doc. #63-5, p. 35.)  Later that month, Plaintiff informed Ms. Braught that he intended to take parental leave in October 2019, when his child was expected to be born.  (Doc. #63-5, p. 36.)

On September 13, 2019, Ms. Braught told Plaintiff that he needed to meet his performance milestones and increase the number of calls made.  (Doc. #63-1, p. 53.)  Ms. Brought observed Plaintiff "fail[ing] to make sales offers" and not "us[ing] the proper VOC verbiage."  (Doc. #63-1, p. 53.)  Plaintiff felt he wasn't getting good calls, although SWB states calls were randomly assigned.  (Doc. #63-1, p. 53.)

On September 19, 2019, Ms. Braught "pulled [Plaintiff] in" and told Plaintiff she heard Plaintiff intended to quit. (Doc. #63-5, p. 39.) Plaintiff informed Ms. Braught that he did not intend to quit, and Ms. Braught responded by saying: "Then we don't need union in here." (Doc. #63-5, p. 39.) The two discussed Plaintiff's issues at work, including "the situation with [Ms. Durham] and how [Plaintiff] was unsatisfied with that[,]" as well as his feeling that employees were treated as "just numbers" and not "really cared about[.]" (Doc. #63-5, p. 39.) Ms. Braught again asked Plaintiff about going on parental leave. (Doc. #63-5, p. 39.) Plaintiff said that he "was going to take the time that was allowed and then come back and go from there." (Doc. #63-5, p. 40.) The discussion ended with Plaintiff resigning. (Doc. #63-1, p. 8.) Plaintiff did not file a union grievance regarding this incident. (Doc. #63-1, p. 43.)

Plaintiff filed a charge of discrimination with the Missouri Commission of Human Rights on October 18, 2019. (Doc. #63-5, p. 43.) Plaintiff states that SWB failed to accommodate him in that it lacked knowledge regarding his MRSA condition and medications, and that it should have provided more "opportunity to step away from [work] prior to [SWB] implementing the day vacation time." (Doc. #63-5, p. 46.) Plaintiff originally filed suit against SWB in the Circuit Court of Greene County, Missouri. Plaintiff alleges SWB unlawfully discriminated and retaliated against him in violation of both state and federal law. SWB removed the case to federal court based on federal question jurisdiction.

Plaintiff asserts the following claims: Count I: Disability and/or Perceived Disability Discrimination, Count II: Racial Discrimination, and Count III: Retaliation, each in violation of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq.*; Count IV: Race Discrimination, and Count V: Retaliation, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; Count VI: Discrimination, Count VII: Failure to

Accommodate, Count VIII: Disclosure of Health Information, and Count IX: Retaliation, each in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; and Count X: Interference, Count XI: Discrimination, and Count XII: Retaliation, each in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

SWB moved to dismiss the amended complaint (Doc. #12), and the Court dismissed Count VII, alleging failure to accommodate under the ADA.[3]  SWB now moves for summary judgment on Plaintiff's remaining claims.  Plaintiff opposes the motion.  The parties' arguments are discussed below.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).  If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial."  *Id.* (quotation marks omitted).  The nonmovant "may not rest upon the mere allegations or denials of the . . . pleadings."  Fed. R. Civ. P. 56(e).  If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party."  *Id.*

---

[3] Plaintiff filed a Second Amended Complaint (Doc. #64) after Defendant filed the instant motion adding a claim for punitive damages.  The Court finds that the filing of the Second Amended Complaint does not affect the outcome of this motion.

7

## III. DISCUSSION

### A. Plaintiff's Disability Based Claims: Counts I, III, VI-VII, IX

Plaintiff asserts five disability-based claims: Count I: disability discrimination, Count III: retaliation, both in violation of the MHRA; Count VI: disability discrimination, Count VII: failure to accommodate, and Count IX: retaliation, each in violation of the ADA. SWB argues it is entitled to summary judgment on all five counts because Plaintiff is not disabled within the meaning of the ADA or MHRA. Plaintiff argues he is disabled because his MRSA required him to sometimes step away from work or be late to work.

To prevail on his disability-based claims, Plaintiff must be disabled within the meaning of the ADA and MHRA. *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1019 (8th Cir. 2019); *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 923 (8th Cir. 2018). The MHRA and ADA define disability, in relevant part, as "a physical or mental impairment which substantially limits one or more of a person's major life activities," including "being regarded as having such an impairment[.]" Mo. Rev. Stat. § 213.010(5); *see also Heuton*, 930 F.3d at 1019; *accord* 42 U.S.C. § 12102(1)(A); *Moses*, 894 F.3d at 923; *see Thompson v. W.-S. Life Assurance Co.*, 82 S.W.3d 203, 206 (Mo. Ct. App. 2002) ("[I]n deciding cases brought under the MHRA, we are guided not only by Missouri law, but also by applicable federal employment discrimination decisions."). "[T]o demonstrate that [Plaintiff] [is] substantially limit[ed] in the major life activity of working . . . [Plaintiff] must show that his condition significantly restricted his ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and training." *Perkins v. St. Louis Cty. Water Co.*, 160 F.3d 446, 448 (8th Cir. 1998) (citation and quotations omitted).

8

In this case, Plaintiff experiences one or two MRSA episodes a year, with the exception of April to September 2019, when he experienced episodes monthly. Episodes last three to ten days, during which Plaintiff experiences pain and side effects from oral antibiotics, including nausea, headaches, and hot flashes. With the exception of short breaks, Plaintiff attends work during his MRSA episodes. Plaintiff's job duties did not change during his MRSA episodes, and he continued to make phone calls and give sale pitches to consumers. Plaintiff presents no evidence that MRSA "rendered [him] unable to do [his] particular job, much less . . . unable to do a broad range of jobs." *Id*. (citation and quotations omitted). "Nor has [Plaintiff] produced any evidence that the [MRSA]-related episodes substantially limited any other major life activity of his." *Id*. Because Plaintiff's MRSA does not substantially limit Plaintiff's major life activities, the Court finds that Plaintiff is not disabled within the meaning of the ADA and MHRA.

Plaintiff argues that, in the alternative, summary judgment is not appropriate because Defendant perceived Plaintiff as disabled. Plaintiff may be considered as disabled under the ADA and MHRA if he is "regarded as having such an impairment." 42 U.S.C. §1202(3); Mo. Rev. Stat. § 213.010(5). "[A] person is 'regarded as' disabled . . . if [the defendant] mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521-22 (1999); *accord Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 822 (Mo. banc 2007).

Here, no evidence suggests that Defendant mistakenly believed Plaintiff's MRSA substantially limited one or more of his major life activities. Although Defendant allowed Plaintiff to take health breaks due to his MRSA symptoms, no evidence shows that Defendant "limited [Plaintiff's] work duties based upon [the] misconception" that MRSA inhibited

9

Plaintiff's abilities to perform his job. *Morgan v. Plaza Motor Co.*, 166 F. Supp. 3d 969, 976 (E.D. Mo. 2015). Plaintiff was still held to the same scorecard standards and call volume requirements as other SWB employees. Every employee was allowed health breaks, and Plaintiff does not allege that SWB granted him special accommodations. In turn, Plaintiff failed to establish evidence which suggests that Plaintiff was "regarded as unable to perform a class of jobs" or "regarded as unable to perform a particular job." *Murphy*, 527 U.S. at 524. Accordingly, Plaintiff was not regarded as disabled within the meaning of the ADA and MHRA. As Plaintiff meets neither definition of disabled as set out by the ADA and MHRA, and because there are no genuine issues of material fact, SWB is entitled to summary judgment on Counts I, III, VI-VII, and IX.

### B.  Plaintiff's Race-Based Claims: Counts II and IV-V

Plaintiff asserts four race-based discrimination claims: Count II: race discrimination, Count III: retaliation, both in violation of the MHRA; Count IV: race discrimination, and Count V: retaliation, both in violation of Title VII. Plaintiff claims that he was discriminated against because of his race and that SWB retaliated against him by constructively discharging him. SWB argues that it is entitled to summary judgment because Plaintiff has not presented any evidence of race discrimination and did not engage in any protected conduct to support a claim of retaliation. Plaintiff's discrimination and retaliation claims are addressed separately below.

#### i.  Race Discrimination, Counts II and IV

"Although the MHRA is not identical to Title VII, the court analyzes a claim for discrimination under the MHRA under the same framework as Title VII claims for race discrimination." *Griffey v. Daviess/DeKalb Cty. Reg'l. Jail*, No. 10-06099-CV-SJ-DGK, 2012 WL 10881 (W.D. Mo. Jan. 3, 2012) (citing *Smith v. Aquila, Inc.*, 229 S.W.3d 106, 112-13

(Mo. Ct. App. 2007)). "To establish a prima facie case of discrimination [under Title VII], a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).

"Without direct evidence of discrimination, [Plaintiff] must advance [his] claims under the *McDonnell Douglas* framework." *Bunch v. Univ. of Arkansas Bd. of Trustees*, 863 F.3d 1062, 1068 (8th Cir. 2017) (citation omitted); *see Midstate Oil Co., Inc v. Missouri Com'n on Human Rights*, 679 S.W.2d 842, 846 (Mo. banc 1984) (holding disparate treatment claims should be evaluated using the *McDonnell Douglas* framework).[4] "If the plaintiff satisfies the prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory justification for its adverse action." *Bunch*, 863 F.3d at 1062 (citation and quotations omitted). "If the employer meets this burden, the plaintiff must prove [the employer's] justification is a mere pretext for discrimination." *Id*. (citation and quotations omitted) (alteration in original).

Upon review, the Court finds Plaintiff has failed to present evidence to support a prima facie case of discrimination. Although Plaintiff is a member of a protected class, the record shows that Plaintiff did not meet SWB's legitimate expectations. Throughout his employment, Plaintiff had difficulty meeting expectations. SWB evaluates its employees using scorecards and expects employees to exceed a score of 100% every month. Plaintiff did not pass February, March, May, June, July or August 2019's scorecards. Plaintiff was placed on a performance improvement plan in March 2019 and placed on a performance notice in May 2019. After these disciplinary actions, Plaintiff continued to fail his scorecards. The Court finds that Plaintiff has

---

[4] Plaintiff does not present any direct evidence of discrimination.

11

failed to establish that he met SWB's legitimate expectations as required to make a prima facie case of discrimination.

Additionally, even if the record showed that Plaintiff met expectations, Plaintiff has failed to establish circumstances giving rise to an inference of discrimination. Plaintiff argues that Ms. Huffman disclosed his MRSA diagnosis because of his race but has failed to present any evidence in support of this assertion. Plaintiff's argument of the race-based disclosure is undermined by his testimony that Ms. Durham disclosed it for non-race reasons. Plaintiff testified he believes Ms. Durham shared the diagnosis with Ms. Huffman because she believed Plaintiff and Ms. Huffman were involved romantically and that the diagnosis was a "serious thing" Ms. Huffman should be aware of. (Doc. #63-5, p. 30.) Further, Plaintiff testified that he did not hear a SWB supervisor make any comments indicating racial bias towards him and that Ms. Braught did not treat him differently than his non-Black peers. (Doc. #63-5, p. 19.) Plaintiff does not produce evidence which gives rise to an inference of discrimination.

In the alternative, Plaintiff argues he was treated differently than other non-Black employees. A showing that "similarly situated employees outside the protected class were treated differently" gives rise to an inference of discrimination, satisfying the fourth element. *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (8th Cir. 2012) (citation omitted). The similarly situated employee "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003).

However, Plaintiff does not identify a similarly situated co-worker that was treated differently. First, Plaintiff argues that SWB discriminated against Plaintiff due to his race because SWB treated the investigation into sexual assault allegations made against Plaintiff

12

differently than the investigation into the alleged disclosure of Plaintiff's MRSA diagnosis made by Ms. Durham. However, the allegations made against Plaintiff and against Ms. Huffman were not similar and involved different alleged conduct. Second, Plaintiff argues that Ms. Braught denied Plaintiff's request to leave her team because of his race. However, Plaintiff does not support this argument with any facts and does not present evidence that Ms. Braught allowed a similarly situated non-Black employee to leave her team. Finally, Plaintiff argues he was constructively discharged while other non-Black employees were not. Similarly, this argument is unsupported by any evidence and Plaintiff does not identify a similarly situated non-Black employee that would permit an inference of discrimination.

Because the evidence does not support an inference of discrimination, he fails to establish a prima facie case of race discrimination. Because Plaintiff has failed to present a prima facie case of discrimination, the Court need not address step two and three of the McDonnell Douglas test. For these reasons, summary judgment is granted as to Counts II and IV.

### ii. Retaliation, Count V

Plaintiff claims that SWB retaliated against him by constructively discharging him due to his race. "Title VII retaliation claims and MHRA [retaliation] claims are governed by the same standards." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 977 (8th Cir. 2012) (citing *Pye*, 641 F.3d at 1015 n. 13.) As Plaintiff has not presented direct evidence of retaliation, Title VII retaliation claims are subject to the burden shifting analysis in *McDonnell Douglas*, as discussed above. *Kempt v. Hennepin Cty.*, 987 F.3d 1192, 1196 (8th Cir. 2021) (citation omitted). "To establish a prima facie case of retaliation, [Plaintiff] must show (1) [he] was engaged in protected conduct, (2) [he] suffered a materially adverse employment act, and (3) the adverse act was

causally linked to the protected conduct." *Bunch*, 863 F.3d at 1069 (citation and quotations omitted).

"To show [he] was engaged in a statutorily protected activity, [P]laintiff must show [he] opposed a practice made unlawful by one of the employment discrimination statutes[.]" *Harris v. Colvin*, No. 11-0795-CV-W-SOW-SSA, 2013 WL 12074969 (W.D. Mo. Nov. 26, 2013), *aff'd*, 577 F.App'x 634 (8th Cir. 2014). "In order for a report of discrimination to be statutorily protected under Title VII, the report must include a complaint of discrimination or sufficient facts to raise such an inference." *Id*. (citing *Guimaraes*, 674 F.3d at 978).

Here, Plaintiff has presented no evidence that he engaged in protected conduct. Plaintiff does not allege he made any written or oral complaint of discrimination before his employment with SWB ended. Additionally, Plaintiff does not establish sufficient facts to raise an inference of discrimination. Plaintiff testified that Ms. Braught and Mr. Wilson never discriminated against him based on his race. (Doc. #63-5, p. 19.) Plaintiff discussed with another team's supervisor that "the vibe" of the call center was discriminatory. (Doc. #63-5, p. 20.) However, this alone does not give rise to an inference of discrimination. *See Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 775 (8th Cir. 2016) (holding no inference of discrimination where the plaintiff "felt" he was discriminated against but never heard "derogatory" comments, never filed a complaint of discrimination, and could not recount "any specific" discriminatory comments). Plaintiff has not established a prima facie claim of retaliation. Accordingly, there are no genuine issues of material fact and summary judgment is granted in favor of SWB as to Count V.

### C. Plaintiff's FMLA Claims: Counts X-XII

Plaintiff asserts three claims under the FMLA: Count X: interference, Count XI: discrimination, and Count XII retaliation. SWB argues it is entitled to summary

judgment on all three counts because Plaintiff was not eligible for leave under the FMLA as he was not employed for twelve months. Plaintiff disagrees, arguing that Plaintiff is considered eligible under the FMLA because his requested leave would have taken place after the twelve-month mark.

A plaintiff must be "an 'eligible employee' under the FMLA" in order to assert an FMLA claim. *Hill v. Walker*, 737 F.3d 1209, 1215 (8th Cir. 2013). "To be eligible for rights under the FMLA, an employee must have worked for [his] employer for at least twelve months." *Id*. (citing 29 U.S.C. § 2611(2)(A)(i)). In *Hill*, the Eighth Circuit acknowledged that other courts have held "that the FMLA protects pre-eligibility requests for post-eligibility leave" but ultimately did not address this issue because the plaintiff "sought only to take leave before she was eligible, and that request is unprotected by the statute." *Id*. (citing *Pereda v. Brookdale Senior Living Cmties, Inc.*, 666 F.3d 1269, 1274-75 (11th Cir. 2012)).

Here, unlike the employee in *Hill*, Plaintiff's requested leave would have occurred after he became eligible. In the Court's prior order on SWB's motion to dismiss, the Court stated:

> Other courts, including a district court within the Eighth Circuit, have recognized that in certain instances, a pre-eligible employee has a cause of action if an employer terminates [him or] her in order to avoid having to accommodate that employee with rightful leave rights once that employee becomes eligible. . . . In most of these cases, courts decide the issue at the summary judgment stage when the parties and the court have the benefit of discovery and can consider, among other things, whether the claimant would have likely been employed at, or beyond, the twelve-month eligibility mark.

(Doc. #21, pp. 10-11) (citing *Wages v. Stuart Mgmt. Corp.*, 21 F. Supp. 3d 985 (D. Minn. 2014)) (quotations omitted). In *Wages*, the court found that the plaintiff was an eligible employee because "[t]he only reason [the plaintiff] was not able to reach her eligibility date is because [d]efendant fired her before she could do so." *Wages*, 21 F.Supp.3d at 991.

15

Plaintiff argues that the only reason he was not able to reach his eligibility date is because SWB constructively discharged him. Plaintiff alleges that his resignation was not voluntary and that SWB constructively discharged him in order to prevent him from taking parental leave. "To prove constructive discharge, [Plaintiff] must show that [SWB] created working conditions [that] were] so intolerable that a reasonable person in [his] position would have felt compelled to resign." *Thompson v. Kanabec Cty.*, 958 F.3d 698, 707 (8th Cir. 2020) (citation and quotations omitted). "An employer's insensitive actions do not necessarily leave a reasonable employee with no choice but to resign." *Id*. (citation omitted).

Plaintiff's constructive discharge argument rests almost wholly on the events of September 19, 2019, the day he resigned from SWB. Ms. Braught allegedly initiated a discussion with Plaintiff, stating she had heard Plaintiff wanted to quit and asked about Plaintiff's intention to take parental leave. Plaintiff testified that Ms. Braught told him that "the time [to take parental leave] is now" because he could be fired at any moment. (Doc. #63-5, p. 40.) Plaintiff alleges he was told "if you do go now, that will at least give you the option . . . to be rehirable by the company . . . and allow [Ms. Braught] to give [him] [a] recommendation if needed." (Doc. #63-5, p. 41.) Plaintiff alleges Ms. Braught informed him that he could have "five minutes" to think about quitting. (Doc. #63-5, p. 40.) Plaintiff called his fiancée, who told him she thought he should quit to ensure he could get a positive recommendation from SWB. (Doc. #63-5, p. 40.) SWB presents an alternative account of the September 19, 2019 meeting. Ms. Braught testified that Plaintiff initiated the meeting and expressed an unprompted intent to resign.

Even taking Plaintiff's account of the meeting as true, Plaintiff fails to show he was constructively discharged. An employer suggesting to an employee that they "could resign from

16

[their] position in lieu of termination" is not sufficient to show constructive discharge where the plaintiff "has not shown that [he] was compelled to resign, or that resignation was [his] only option." *Thompson*, 958 F.3d at 708. Like in *Thompson*, "the record demonstrates that [Plaintiff] elected to submit [his] resignation" after consulting his fiancée and that he had the option to continue employment, although termination was a possibility if he did not resign. "[SWB's] actions, although perhaps insensitive . . . , do not amount to 'intolerable working conditions.'" *Id*. Plaintiff has not presented facts showing that SWB prevented Plaintiff from reaching his FMLA eligibility date. Accordingly, the Court finds that Plaintiff did not reach his eligibility date because Plaintiff voluntarily resigned. Therefore, even if the Court were to follow the pre-eligibility rule under *Wages*, Plaintiff was not an eligible employee under the FMLA because Plaintiff resigned before reaching his eligibility date. Defendant is thus entitled to summary judgment on Counts X-XII.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant SWB's Motion for Summary Judgment (Doc. #62) is GRANTED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

DATE: March 25, 2022